## West's Appeal.

1. Where the entry of satisfaction of a mortgage is shown to have been entered by mistake, it is not conclusive as between the parties to the transaction.

2. A mortgage was held as security for certain notes. In the belief that all the notes were paid the mortgagee satisfied the mortgage of record. It was discovered that one of the notes was unpaid, of which the mortgagee had no knowledge. The debtor made an assignment on the following day. The mortgaged property was sold for arrears of ground-rent. *Held*, that the mortgagee was entitled to recover out of the surplus of the purchase-money the amount of the note unpaid.

January 14th 1879. Before SHARSWOOD, C. J., MERCUR, GOR-
DON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas, No. 4, of *Philadelphia
county*: Of January Term 1878, No. 166.

This was the appeal of Henry F. West, assignee of the Girard
Tube Works and Iron Company, from the decree of the court dis-
missing the exceptions to, and confirming the report of the auditor
appointed to distribute a fund arising from a sheriff's sale of real
estate.

The facts as found by the auditor, Pierce Archer, Jr., Esq.,
were, in substance as follows : The fund in dispute was $3607.70,
the balance of the purchase-money of a wharf property on the river
Schuylkill, the title to which was in the Girard Tube Works and
Iron Company, and which was sold under a judgment for arrears
of ground-rent. The fund in the hands of the sheriff was claimed
by the First National Bank of Reading, and by Henry F. West,
the assignee, for the benefit of creditors of the Girard Tube Works
and Iron Company.

During the years 1874–5, the bank had been discounting the
paper of the Girard Tube Works and Iron Company of Philadel-
phia. In December 1874, the paper so held by the bank amounted
to $21,508.70, part of which was then near maturity. The bank,
at the request of the Girard company, agreed to renewals of the
paper, provided mortgages were given to secure them to the amount
of $21,000. Accordingly, on December 31st 1874, a mortgage
for $17,000 was assigned by the Girard company to the bank, se-
cured upon certain wharf property on the river Schuylkill, near
Arch street. The mortgage itself was given by Charles T. Mur-
phy to the bank ; but in point of fact the property itself belonged
to the Girard company, and Murphy, who merely held it for them
as trustee, afterwards executed a declaration of trust to that effect.
This mortgage, with another of $4000 on No. 1427 Vine street,
executed directly by Charles T. Murphy to President Eckert of
the bank, made up the $21,000 security required by the bank, and
the transaction was consummated on January 4th 1875, by the de-
livery of the papers.

Contemporaneously therewith, President Eckert, for the bank,
delivered to the Girard company a receipt or declaration, reciting,
inter alia, that he holds the $17,000 mortgage as security for the
payment of certain promissory notes of said company then held by
the bank and any renewals of the same. These renewal notes, it
appeared, were always sent several days in advance of the maturity
of the originals. There were three of these notes due on March
3d 1875, which were renewed for four months, with one note
amounting to the aggregate, $5156.95.

On April 15th, about a month after this renewal, the Girard
company wrote to the bank, as follows :—

"The two notes of ours maturing on the 21st and 27th inst.,

were included in Mr. Norris's statement for renewal. We are advised you have sent them forward for collection. Enclosed we hand you two notes of Geary, Tilton & Colwell for $2718.75 and $2371.69, respectively, which, if you prefer to our paper, we ask you to discount and apply proceeds to payment of our notes. Should this meet your views, please advise us."

On April 19th 1875, the bank wrote in reply: "Yours, 15th, with two enclosures addressed to Mr. Eckert for discount, has been received. I send enclosed statement showing you are short in the transaction $74.42, for which send us your check."

On April 20th, the company acknowledged the letter of the 19th and statement, and enclosed check as requested.

At this time there were due the note of the company for $5156.95, and the two notes of Geary, Tilton & Colwell, of which that for $2718.75 was paid on June 27th. On the 9th of June, the company wrote that they desired to have the wharf property released from the mortgage. The negotiation culminated on July 3d, in an interview in Philadelphia, between President Eckert, of the bank, and Mr. Charles T. Murray, treasurer of the Girard company, at which Mr. Norris appeared as attorney for the bank. Before leaving Reading, President Eckert directed one of the clerks to make him a statement of the Girard company's account, which he did, showing but the one note of $5156.95 due by them as makers, and omitting the note for $2371.69, on which they were liable as endorsers. Eckert swore that he did not then know of the existence of the note omitted; he brought this memorandum with him to this city, and having no other knowledge on the subject but that furnished by the clerk, he assumed it to be correct, and acted on it at the interview with Murphy.

The result of the interview was, that Murphy gave Eckert two notes of the Pittsburgh Bolt Company, with the Girard company's endorsement, in exchange for the $5156.95 note, the bank paying him the difference in cash, and receiving as security a mortgage for $4000 on another property. The $17,000 mortgage was then satisfied of record by the bank, and the second day thereafter the company failed and made an assignment to Mr. West, the appellant. The auditor found that the parties all concur that the adjustment of the 3d of July proceeded upon the declaration and assumption that but one note of the Girard company was still held by the bank being about $5000. He further reported, "It is impossible for the auditor, in the view he takes of the evidence, to conclude otherwise than that the mortgage of the bank was surrendered and satisfied by its chief officer through mistake and oversight, caused by the mis-information of the clerk and the conduct of Mr. Murphy.

"It is not pretended by any one that Eckert knowingly released, or intended to release, a first-class security, with knowledge of the

note in dispute being in existence, without an equivalent. He distinctly swears he knew of but the one note due, and· that he would not have released the security for that one except getting, as he thought, nearly an equal one in the $4000 mortgage.

" Even Charles T. Murphy does not testify that the other note was at all spoken of or considered at the interview, or that it was regarded by the parties as having been taken out of the protection of the $17,000 mortgage. The extent of his claim is that because the bank took and discounted the Geary, Tilton & Colwell notes, shifting the Girard company's debtors place from maker to that of endorser, that, therefore, there was no indebtedness to the bank on that account. He did not swear that the bank held no other liability of the company, only that they held none of the company's paper for this amount, except their endorsement. He says he knew of this endorsement at the settlement, but considered that the Girard company was not liable because the bolt company was then good, and that while, as every one concedes, the unpaid note was not one of the notes (originally) secured by the mortgage, he goes the length of swearing that neither was it taken in lieu of one secured thereby—that is, not a renewal; because he says, *arguendo* —the proceeds of the secured notes when discounted took the place of the original notes, and were placed to their credit. He does not aver any parol agreement to release the security and accept the new notes, nor does he pretend that the credit and standing of the new names of Geary, Tilton & Colwell were known to the bank, or that they acted upon it."

In passing upon the law of the case, the auditor said:

" First, then, as to the effect of the entry of satisfaction of the mortgage : If this question arose between parties strangers to the transaction—if, in other words, the satisfaction was sought to be invalidated, and the mortgage revived to the prejudice of an innocent purchaser for value without notice—there would be little difficulty in disposing of the attempt to do so manifest an injustice. But such is not the case in hand, and for the present the question is to be regarded as between the original mortgagor and mortgagee, and whether the mortgagee is bound absolutely and at all events by the satisfaction of record. I am of opinion that he is not, and that if a plain mistake of fact was made in satisfying the mortgage, that he is entitled to be heard in this controversy.

" Judge WOODWARD said, in Fleming *v.* Parry, 12 Harris 47, that between the original parties, where the rights of third parties had not intervened, a release or extinguishment of a mortgage or bond without actual payment, is not a discharge unless so intended by the parties, and " that there is no magic in an entry of satisfaction, either on a judgment or mortgage, which can prevail against the truth and equity of the transaction," and if put on record at the instance of the mortgagor and for his benefit, he is not entitled to

plead an estoppel; 'a record it is,' he says, 'but not a judicial record,' citing Morris *v.* Brady, 5 Whart. 541; Robert *v.* Halstead, 9 Barr 32.

"Sammans, Trustee, *v.* Binder, 7 Whart. 209, decides that the entry of 'settled' on the record of the suit on a mortgage was not conclusive on the mortgagee as against a purchaser having knowledge of equities to the contrary.

"The whole subject was very fully considered by Judge AGNEW in Lancaster *v.* Smith, 17 P. F. Smith 427. He held that the registry of a mortgage is not such a record as imports absolute verity, that it is in no sense judicial, that the entry of satisfaction is the act of the party, not the official act of the recorder, and that a satisfaction procured by fraud is no satisfaction at all.

"The result of an examination of these and other cases show that as between the parties, where there is no element of estoppel, the record of satisfaction of a mortgage has no greater sanctity or solemnity than any ordinary declaration in writing or a receipt made by a party, procured by fraud or by accident or mistake, and it is therefore open to contradiction and may be shown to have been given under a mistake of fact or law : Per SHARSWOOD, J., Russell *v.* The Church, 15 P. F. Smith 9.

"Not importing absolute verity itself, therefore, as a judicial record, it is not protected by any rule governing official records of courts which imply judicial consideration and determination ; nor does it stand in equity as a deed, requiring a preponderance of proof unusual in other cases, to overcome it.

"That equity would set aside the entry of satisfaction upon proof of the facts alleged in this case, I do not entertain a doubt, upon the grounds either of mistake or fraud, and since the sheriff's sale has divested the lien of the mortgage from the land, the only remedy of the mortgagee is the present one—by claim upon its proceeds : Bright. Eq., sects. 58–9, 61–2 ; Adams' Eq. *188–9.

"Upon the second question as to whether the assignee for creditors stands in any better position than his assignor—the mortgagor— I have no difficulty whatever. The very recent case of City Bank of Harrisburg *v.* Sherlock, 3 Norris 366, definitely settles this question, citing Fulton's Estate, 1 P. F. Smith 211, which contains a review of a host of authorities on the subject."

The auditor awarded to the bank the amount of the Geary, Tilton & Colwell note with interest, and the balance of the fund to the assignee. The latter filed a number of exceptions, among which were the following :

Because he reported that the notes given by letter of April 15th 1875, were a renewal of the previous notes, and secured by the mortgage of $17,000 ; because he did not report that the letter of April 15th 1875, from the Girard Tube Works, together with the

[West's Appeal.]

reply thereto, made the notes then taken a payment of the previous notes; because he admitted the testimony of Mr. Eckert to contradict or explain the meaning of said letter; and because he reported that the entry of satisfaction so made was not final and conclusive between the said parties.

The court dismissed the exceptions and confirmed the report, and from this decree this appeal was taken.

*E. G. Platt* and *Samuel Dickson*, for appellant.—By the satisfaction of the mortgage the legal right of the mortgagee was entirely extinguished. His only remedy was by a bill in equity to restore this right. The only question for the auditor to decide was whether the lien of the mortgage was gone by the entry of satisfaction. After that entry it is denied that it was a security. As between these parties the lien was absolutely extinguished and it could only be restored on the clearest evidence of fraud or mistake. A mistake will not be relieved against, if it is the result of the party's own negligence: Duke of Beaufort *v.* Neeld, 12 Cl. & Fin. 248; Bispham's Eq., § 191. It will not be relieved against when he has not made use of the means of inquiry open to him: Bispham's Eq., § 191; Kerr on Fraud and Mistake 407. The mistake must be mutual to induce the court to reform a contract: Cooper *v.* The Farmers' Mutual Ins. Co., 14 Wright 299.

*E. Spencer Miller*, for appellee.

The judgment of the Supreme Court was entered, February 3d 1879,

PER CURIAM.—We entirely concur in the conclusions of law and fact of the learned auditor in the court below and affirm the decree on his report.

Decree affirmed and appeal dismissed at the cost of the appellant.